Case number 19-4172 United States of America v. William Wheat Jr. Argument not to exceed 15 minutes per side. Mr. Johnson, you may proceed for the appellant. Morning. Good morning. Good morning, Your Honor. May it please the Court, I am Stephen Ross Johnson. I will represent the appellant, William Wheat. With the Court's permission, I'd like to reserve three minutes of my time for rebuttal. Okay. Your Honors, the issues that have been raised by Mr. Wheat on appeal are that the superseding indictment was insufficient, Mr. Wheat's conviction should be vacated because they are not supported by sufficient evidence, and that his sentence was unlawful. Very briefly, with respect to the facts, Mr. Wheat was one of the lesser defendants charged in a drug conspiracy in the Northern District of Ohio involving a lead defendant by the name of Aaron Rios, who was initially indicted on May 23rd, 2018. A superseding indictment was returned on December 12th of 2018 that named seven defendants, one of whom was Mr. William Wheat. Count one of the indictment charges a conspiracy to possess with intent to distribute and to distribute a mixture or substance containing a detectable amount of cocaine, heroin, fentanyl, and... So I agree that you have a decent argument that Mr. Wheat didn't participate in any far-ranging conspiracy involving all these different actors, but why isn't the evidence at least sufficient to suggest that he conspired with Rios to distribute the sample? That's an excellent question, Judge Murphy, and here's why. It's because Mr. Wheat, at best, what the evidence shows in the light most favorable to the government is that there were three telephone calls between Wheat and Rios, just about something about meeting up. They didn't meet up. There is law enforcement observations at a convenience store gas station, Circle K, where law enforcement observes Mr. Wheat just put his hands into the vehicle of Mr. Rios, and then that's it, and then there's no observation of... But you have, I mean, this is a, it's a sufficiency of the evidence challenge. You have Rios' own testimony that he was handed 0.3 grams of heroin. I mean, I think that's overwhelming, not just substantial evidence of this specific transfer. So if you were charged with distribution, that would be fantastic evidence, but I'm charged with conspiracy, but why doesn't that also show a conspiracy to distribute the sample? No, with respect, Your Honor, I mean, there's a big difference between a single distribution or a buyer-seller relationship and a conspiracy, and that is not sufficient evidence to meet a We do appreciate the buy-sell point, like that's rock solid for you, but when it's a sample, don't we, I mean, I think, wouldn't you agree, let's say this was, there's one difference in the case, that he was fronting the 0.3. You would agree that would be a problem for a conspiracy if the word were front as opposed to sample, right? It, that could be, Your Honor, but even then, if you're just fronting it, What circuit in the country doesn't have the conspiracy apply to fronting? I thought that was an across-the-board okay when it came to conspiracy law. Am I, do you know of anything that goes the other way on that? I would have thought fronting was pretty straightforward. It doesn't mean it's a huge conspiracy. It may still be small the way this one ultimately was, but I thought, I would have thought fronting would be pretty devastating. Am I wrong about that? Well, with respect to, I think that the issue is, are you running it just to give it to that person for that person to use it, or is there evidence that you're running it to that person so that person then can later distribute it and then meet the goals of the conspiracy distribution, and that's the distinction that I'm. Yeah, what is the evidence, what is the evidence suggesting that, obviously, we know for a fact that Reals gave it to Malika to try, so there was this further distribution. I would think if Wheat gave it to Reals, knowing that Reals was going to re-transfer it to Malika, that that would be enough to suggest that there was an agreement between Wheat and Reals to distribute the drug to Malika. So what evidence is there to suggest that Wheat had knowledge that Reals would re-transfer it to Malika? That's a wonderful point. There's no evidence in the record that Wheat knew that Reals was going to transfer it to Malika at all. But, I mean, he knew it was a sample. Can we assume just, is it like circumstantial evidence? He's giving him a sample. We know he's going to have to test the sample somehow. There's perhaps a pragmatic instinct that the way you test a sample is to try the sample. So why wouldn't it be enough to think that he's giving him a sample for a jury to conclude that he knew that he would give the sample to somebody else to try? Well, respectfully, Judge Murphy, I think, first of all, the evidence, the testimony from Reals is equivocal about whether or not what Wheat was giving him was a sample. He's questioned by the assistant U.S. attorney at trial about whether or not this is a sample. And what Reals says is maybe. If you want to fight it on that ground, you can. But I thought, given the inferences, we had to accept that the evidence was clear that Reals appreciated it was a sample. Well, I mean, in answering Judge Murphy's question, I mean, would it make a difference that Wheat knew Reals and would know that he wasn't an addict? And so that would suggest Reals wasn't doing the sampling? Well, I think that in response, Your Honor, I think the testimony at trial was that Reals and Wheat actually didn't have much of a relationship with each other. And they had no prior real relationship at all with respect to drug dealing or business. And they had a very incidental relationship. So I'm not sure the evidence is there that he would know that Reals did not use substances. I want to go back to the fronting analogy and tell you, tell me, poke holes in what I'm saying. I would say a fronting situation where everything's the same. It's this case. You don't know about third entities, but it's agreed that it's fronting. So Wheat is fronting to Reals this amount. He's getting no money in return. And the reason it would allow, it seems to me, the inference of a conspiracy to distribute is how else are you ever going to get the money back unless Reals is proceeding to sell to somebody else? So that's what implies there's something broader going on that counts as a conspiracy. So if that's true, so just accept that for the sake of argument. No point, it hasn't been briefed, so no point challenging that. But if that's true, why isn't a sample convey a similar point that you, just as you wouldn't just give it to them without expecting something later, it's similar with a sample. Why would you do this if the whole wasn't to get it tested potentially for the reason you have a sample? That's what seems so different from buy-sell. Well, and that's true, your honor. I mean, you could have that speculation. The speculation, it could also be that you're giving it to someone who may want to buy it in the future and for their own personal use as opposed to sell it. And, you know, any number of... Isn't 0.3 a lot for that? 0.3 grams for personal use? I'm not sure that's in the record, your honor. So I'm not sure I can make that natural inference. I think the logical, another logical step from the court's questions though, is that there is, even if there is evidence of conspiracy, it's not the conspiracy that was charged. And that's the issue, that there's no conspiracy based on this evidence between Mr. Wheat, Mr. Reals and the other defendants to distribute this large quantity of any number of drugs. And that's not what occurred in this case. And the government had weak evidence and then in an effort to really make its allegations fit the evidence that came in at trial, then they wanted to drop the drug quantity allegation. And then once they had the conviction, they'd come back in at sentencing using the lesser standard for sentencing and expert testimony and speculative expert testimony to enhance Mr. Wheat's sentence before the district court. And that, respectfully to the court, is how all of this flows in together. And it's the prejudice that resulted to Mr. Wheat. What is the prejudice from the charged large conspiracy and maybe proof at trial of a smaller conspiracy? Because the indictment clearly conveyed, except for the fact that it said sell versus give a sample, the indictment clearly conveyed the underlying acts that were at issue. So it's not like this is a situation in which you were caught off guard by unexpected evidence. The indictment clearly conveyed your client's activities in the case that was later introduced at trial. Well, with all due respect, I mean, there was a variance between the indictment and the evidence that came in. The indictment alleged that Mr. Wheat conspired and confederated with the others within the indictment, all the charged defendants, in order to distribute this large quantity of drugs. Yeah, I grant the variance, but where's the prejudice? That was the point, because the smaller conspiracy was also alleged, or at least the facts making up a potential smaller conspiracy were alleged. Well, here's the prejudice, Judge, is that the jury had before it a single conspiracy count, and then they had before it a single conspiracy count, now with the drug quantity removed. And so if they were going to find, without a reasonable doubt, that there had been this distribution to Reals, and it was a sample, and that there was some sort of conspiracy, a limited conspiracy, a different conspiracy between Reals and between Wheat, then that is a variance, a fatal variance, between what occurred. And here's the prejudice from just a trial lawyer perspective. You go into the trial, and you are defending the case that Mr. Wheat is not part of this large conspiracy, and that he certainly did not have the intent, and he did not have the knowledge to distribute, or to conspire to distribute, this large quantity of drugs. And so when you remove the drug quantity from what goes to the jury, the prejudice that's visited upon Mr. Wheat is then you eviscerate that big part of the defense, factually, in front of the jury. And that's the prejudice that was visited upon, I respectfully submit to the court. How much longer does he have to serve, would you know? He is in a halfway house right now, your honor. He's actually in a halfway house listening to this argument right now. He's in a halfway house, and then he, I believe, gets out of the halfway house later this year, and then will be on supervised release. I'll say that my time is up, if you have no further questions, I'll reserve the rest of my time for the vote. All right, thank you, Mr. Johnson. We'll hear from Ms. Ford. Good morning, your honors. May it please the court, my name is Laura Ford, and I'm here on behalf of the United States. This morning, I'd like to begin just by stating a little more precisely the government's position on the applicable standard of review before moving to the arguments about the variance. You know what would be terrific, is I think we're really pointing to a conspiracy sample point, and I think that's why we wanted argument, and that's what we're really struggling with, and I think we've got the other stuff down pretty well, so if you could focus your energy on that. There's not a lot of sample cases out there. One finds oneself a little puzzled why it couldn't just be charged as a straight-up possession to distribute, but the government, for whatever reason, started out with a conspiracy and kept that all the way through. We don't have evidence of the sampler, or maybe you can tell us why the jury could infer that there was this sampler out there, so help us out. That's what we're wondering about. Certainly, your honor. So, the government's position is the evidence was sufficient in this case because Wheat is the one that is contacting his acquaintance, Reels. There's testimony that they occasionally would have drinks together, and he says, I came across something in your field. At the time, Reels's field was heroin and cocaine, and there's some specific questions about what the quality of this cocaine was, or cocaine, I'm sorry, heroin, and Reels is very interested in whether or not there's cutting agents that have been added to it, and he says, you know, how is it? And Wheat says, you tell me. He's inviting him to test the substance. All right, let's say everything in the case is exactly the same, except this, that it's actually buy-sell. In other words, Wheat actually, he gives him 0.3, he's paid fair market for it, and says, yeah, if you're unsure, do what you want, but give me the money, and that would just be, wouldn't that be just pure buy-sell at that point? No, because I think he knows that his field, when he says, I found something in your field, he knows that he's, that Reels is a drug dealer. That conveys that he is acknowledging, I know you're in the business. I definitely think you have an offer, but a conspiracy requires an offer, and the hypothetical was, there was one additional call, and the call was from Reels to Wheat, and Reels said, I think the sample was awful. I will never conspire with you. Would you say that that was sufficient evidence of a conspiracy, just from giving the sample? On Wheat's part, I mean, there would be a conspiracy to provide the drugs for potential distribution. You know, the fact, I think that Reels did not ultimately buy drugs, but there was. So then, is that a concession, that the only conspiracy that is potentially in play here, is the conspiracy to distribute the sample, and not a larger conspiracy to agree to exchange greater quantities of drugs? Reels was definitely interested in having a possible source for heroin. That, you know, there's calls indicating that some of the quantities that he was receiving were of poor quality. Yeah, but he quite clearly testified a trial that he never purchased, or never considered, or at least never purchased from Wheat, and so I would think that my hypothetical, to the extent it's analogous to my hypothetical, of where he just interested, that clearly would not be enough to show a larger conspiracy. So I'm not certain that there is evidence to suggest that there was ever an agreement on the other side for anything bigger. Well, I think that he definitely was evaluating the substance that he received for the possibility of buying a greater amount, and that's why he, minutes later. Our cases say negotiations are not enough to prove agreement, and the conspiracy charge is different from a regular charge, because if you prove the conspiracy, you're on the hook for all the conspiratorial acts. That's why you charge the higher quantities. That's why it's so important, it seems to me, that we stick to the key elements of a conspiracy, which is agreement. And I saw an offer, an attempt to agree, which is a solicitation at common law, but there was no agreement on the back end. Well, can I just, I'm losing track of the conversation. I can't tell if you're debating the charge that the government dropped, or the charge that was actually given. Are we still talking about the conspiracy to distribute a sample? No, this is the broader. It didn't drop though. Can we focus on the simpler one? Because this, you know, so focus on the conspiracy to distribute a sample. Isn't it still if it's just a sample by reels back to wheat? Doesn't that look like buy-sell? No, because he's inviting reels to test the quantity, to potentially buy a greater volume from him when he's saying, you know, how is it? He says, you tell me, you know, are there any cutting agents, you know, involved? And he says, I don't play like that. And then he says, they said it was nice. So he's got another source that he's getting these drugs from, and he's clearly trying to get into the business with his acquaintance who he knows his field is drug distribution. You responded to Judge Sutton's question. Judge Sutton's question was, is there enough evidence of a narrow conspiracy? And you responded by opening up to the broader conspiracy of whether there was an agreement to distribute larger amounts. And I agree that there was clearly an intention on your client's part or on wheat's part, or at least the evidence could suggest there was an intention to distribute those larger amounts. But all he did was distribute a sample. And I don't see reels agreeing to anything larger. So I think that goes back to Judge Sutton's point that all we have is a agreement to distribute this sample. An agreement to distribute a sample for testing for a potential greater deal. And I think that's a fair inference that that's exactly what was going on. And you need evidence of a third party to have a cognizable conspiracy to test a sample, or can that be a two-person deal? Federal drug conspiracy law, it's an agreement between two or more persons. And I think it's a fair inference. But the point behind, it's called buyer seller, at common law, it was called the Wharton's rule. The point behind the buyer seller rule, it seems to me, is that a conspiracy must be more than the agreement that is necessary for the substantive crime. And if the substantive crime is a distribution, that's going to be A to B. So if all you have is an agreement from A to give to B, the Wharton's rule would suggest that that is not enough to show a conspiracy. And you have to show something more than an agreement that is required for the substantive crime. So if you apply it to the facts of this case, it would suggest that just an agreement to give the sample from Wheat to Reals is not enough. And you need to show an agreement to redistribute that sample. And what evidence is there that Wheat knew that Reals would redistribute the sample to Meleca for testing? I think that's a fair inference based on him inviting him to test it. The fact that he gave him three-tenths of a gram of heroin that is probably worth between $20 to $40. He's not inviting him to take recreational drugs together. He's saying, take this sample, test it, let me know. You tell me what you think. If he thought Reals was going to test it himself, that would be insufficient, right? Because there would be no... This is the thing. Well, let Judge Busch just not a chance. I guess I was going to follow up on Judge Murphy's question. Does it matter what the purpose was for why the purchaser got the drug? Because in the typical case, when we say that you cannot have a conspiracy from a sell of a drug, the purchaser is actually using the drug. And that's just the only purpose of this, for the purchaser to use the drug. Here, the purchaser was using the drug to determine whether to distribute drugs in the future with this seller. And that could be an inference. So I guess my question is, would that be enough? That's the motive here that a jury could find for the purchaser. Is that enough to say that just the fact that it doesn't really matter whether the purchaser ever... One knew that the purchaser was going to give it to a tester. It's enough to say the evidence here shows that the purchaser was in the drug, not for just for personal use, but to determine whether or not to sell drugs in the future from this seller. That's a friendly question for the government. And I would agree with that because let's say the law enforcement had intercepted Reals before he ever could even call Malacca to say, hey, I've got something for you. I want you to test this. That's enough to have... You've got the offer to provide the sample. You have the meeting. That's enough in this case. So just to clarify, so that means you think that there is enough evidence of an agreement, not just for the sample, but of an agreement to distribute larger amounts of drugs? Yes. And I guess I would say with heroin, and I believe it's in the record that it is very common to have a separate tester with heroin. It's highly addictive. At the time, I think they testified a lot of this was fentanyl. And a couple of the controlled buys involving Reals were fentanyl. So it's not uncommon to have a separate tester. And would your answer... So go back to my hypothetical. I just want to... It's just because it was an open-ended ending. Would your answer be different if my hypothetical final call came in where Reals said, I'm not going to buy any further drugs from you? So there was never an agreement to buy more drugs. There was just an offer, a test, and a rejection. Under that scenario, would you think that there would be insufficient evidence? No, Your Honor. I still think that at one point, it was still open-ended where he was open to testing it to determine. But that's going to the latter end and saying, oh, no, this quantity is buying this. But you still had an agreement to provide the drugs to potentially distribute to other customers. And that would be enough. It would not matter if... That's what I'm confused by. What is the agreement that is necessary? Because that suggests that there never was an agreement because there was an offer by Distribute Drugs with you. I don't understand where the agreement was. The agreement was to provide... A sample? The sample for potential future drug transactions between the two. That was the hope. That was Wheat's goal. And that is what the evidence established. Whether or not Reals was intercepted before he could call Meleca, that would not make a difference. The fact that he ultimately decided not to buy, you don't need to have that. You don't have to have an overact to satisfy this. And it was sufficient here that there was this agreement to provide. There was an offer that they did meet, and he did provide the sample. The fact that it turned out to be fronted drugs versus selling of drugs was a difference without consequence in this case. You just used the word front. Do you think sample and front, is it the same analysis for both? I do think it is the same analysis. It could be to a person. It doesn't count as nearby sell. And the reason it doesn't count as nearby sell is the nature of fronting, which usually is beyond... Well, that's the whole point. You wouldn't... If you were buying it to consume, you wouldn't be fronting it. You would be paying for it at that point. And so that's... And that can be two person also. It just doesn't matter if the evidence shows there's not more. It doesn't matter if later on they say enough is enough. In fact, I take it on a fronting thing, you could later on reject doing more business and then pay at that point. Would that undo the fronting? If they not only rejected, but then paid at that point for what they got. Does that now take it back to buy sell? If they decided to... I think as long... No, I think what matters is the intent at the time. And at the time here, it was to determine whether or not to buy a greater quantity. But if you were intercepted before, like you were fronted before, you could provide... You could redistribute the controlled substance to your customers and we're not in a position to pay back, that wouldn't matter. What matters is that initial agreement. In this very case, if Reals had been... Said, sorry, I found somebody else. We don't like the sample. Here's 30 bucks. I want an honest businessman. You would still say the charge could be upheld and that would still suffice. At the time that the agreement was to provide the sample to evaluate for a greater... For possibly engaging in future transactions together. And I do believe that is sufficient, your honors. I see my time is up, your honor. Let me just wait, just to make sure both my colleagues don't have any other questions. Judge Murphy, Judge Bush. Oh, thank you very much. Okay, Mr. Johnson, we'll hear your rebuttal. Well, your honor, respectfully, funding is not the same as sampling. And it's because of the issue of an agreement. If you're going to front something to someone, you are necessarily having the intent, and this is the way the law is, as we know, having the intent that it's later going to be sold because you don't have the money to pay for it right then. What if it's the first time the two people have done business together and he says, I'm going to front you this, it'll allow you to sample it. I mean... Now it's actually a situation that... I'm sorry, let me talk over you. Well, I was just saying, I don't understand how that's very different from this case. The point is either way, it's free. So that's what's equivalent. I think it's fundamentally different from this case. It's fundamentally different from this case because I'm going to front it to you so you can sample it. Okay? That implies, you're going to test it and see if it's okay, or you're going to sell it to someone else, and they're going to tell you if it's crap or not. But either way, I've got the intent that you're going to have a further distribution and that we are going to have a relationship in the future, that you're going to sell it and then you're going to pay me back for what I have fronted to you. Here in this particular case, the evidence is clear. Reales never contacted Weeded yet. He never had some sort of agreement with him to engage in drug distribution or further drug distribution. And there is no evidence in the record at all that Mr. Weed knew that he was going to send it to a third person to be sampled. In fact, if you look at the actual telephone call, Mr. Weed says, you tell me, you tell me, not you go get it tested and tell me, you tell me. What if I changed the hypothetical that I asked opposing counsel to Reales saying, I thought the heroin was pretty good. I just don't need any heroin right now, but I'll keep you in mind when my supplies go down for future transactions. Do you think that would be enough to show an agreement to redistribute in the future? Respectfully, Judge Murphy, I do not think. I think that is, that's a speculation. And I think that's a potentially a discussion or a negotiation about whether or not there's going to be an agreement to have a business relationship in the future. But it's not the fact that there is a business relationship, that there is a conspiracy and that it's a conspiracy that is defined and is definite. And I don't think that would evidence that would be sufficient evidence for an agreement in a conspiracy case. For all of those reasons, your honors, I respectfully submit to the court that Mr. Weed's convictions should be reversed and his sentence should be reversed. Thank you very much. Thank you, Mr. Johnson. Thank you, Ms. Ford. We're quite grateful for your helpful briefs and oral argument. Thanks for answering our questions. It's a tricky case, so we're really happy to have good, good lawyers. So thank you very much to both of you. Case will be adjourned. Court is now adjourned.